KLYNE (PENN v.). See Cases Nos. 10,935, 10,936.

## Case No. 7,872.

KNAGG v. GOLDSMITH.

[Gilp. 207.] 1

District Court, E. D. Pennsylvania. July 22, 1831.

SEAMEN'S WAGES—FORFEITURE—ENTRY IN LOG BOOK.

1. Where a vessel arrives at the last port of delivery and is moored at the wharf, if a seaman leaves her before the discharge of the cargo, a deduction from his wages is allowed, but not a forfeiture of the whole.

1 [Reported by Henry D. Gilpin, Esq.]

2. To subject a seaman to the forfeiture of his wages according to the provisions of the act of 20th July, 1790 [1 Stat. 131], the entry in the log book is indispensable, although the absence was permanent, and although it occurred after the vessel arrived at the last port of delivery.

[Cited in The John Martin. Case No. 7,357; The Lilian M. Virgus, Id. 8,346.]

[This was a libel for wages by Thomas Knagg against Samuel Goldsmith, master of the brig Ann and Leah.]

Mr. Grinnell, for libellant.
Mr. Newcomb, for respondent.

HOPKINSON, District Judge. The important facts of this case are these: The libellant, Thomas Knagg, on the 3d March last, shipped at Philadelphia, as a mariner on board the brig Ann and Leah, on a voyage from Philadelphia to Attakapas, in the state of Louisiana, and back to Philadelphia, at the wages of fourteen dollars a month. He performed the voyage, not without some exceptions to his qualifications, but doing his duty as a mariner "as well as common." The brig returned to Philadelphia on the 26th June, where she has since discharged and delivered her cargo. On her arrival she was made fast to another vessel, lying at the wharf, the brig being at that time unable to get in. After she was thus fastened, with sufficient safety, the libellant, being in a state of intoxication, went on shore, or was put on shore by the captain, who directed him to go to a boarding house, as the rest of the crew had done, but with no intention of discharging him, or giving him permission to leave the brig until she was brought along side of the wharf and unladened. He did not return to the brig, nor give any assistance in discharging her cargo. The libellant now claims his full wages, and the balance agreed to be due is thirty-one dollars and thirty-three cents, provided he has not made himself liable to any forfeiture or deduction by leaving the vessel. On the part of the respondent, it is alleged, that by his desertion and neglect, or refusal to do his duty, he has forfeited all his wages then due.

It will be seen at once that this case presents the question, whether it is or is not the duty of a seaman, under his contract with the master of a vessel, to remain with her until her cargo is discharged, and to give his assistance in discharging it; or whether the obligations of his contract terminate, as the libellant now contends, on the arrival of the vessel at the last port of delivery, and after she is there moored in safety. The libellant relies, for the support of his law of the contract, on the decision of Judge Peters in the case of Swift v. The Happy Return [Case No. 13,697]. The judge there says: "As to mariners shipped for the voyage, unless specially obliged by the articles, as they are in many ports of the United States and elsewhere, it is questionable whether or not they are bound to unlade the ship after the voyage is ended, when the vessel has arrived at her last port of delivery and is there safely moored." If the judge be correct in his opinion, which I do not affirm, of the time when, legally speaking in reference to this contract, the voyage is ended, it is nevertheless clear, that in his case the sailors were shipped generally, "for the voyage," and that there was no special obligation, in the articles, to enlarge the period of their duty, or to extend their service to another object. When such an obligation is introduced into their contract, it surely forms as reasonable and valid a stipulation as any thing contained in the articles. This special obligation is found in the articles before us; and may have been introduced here in conformity with the practice in many other parts of the United States, and in consequence of the decision of Judge Peters, in the case referred to. It is expressly stipulated in these articles, that the seamen shall not "go out of the said vessel on board any other vessel, or be on shore, on any pretence whatsoever, until the above said voyage be ended, and the said vessel be discharged of her loading, without leave." In another part of his opinion, Judge Peters says: "In this port it is the general custom to hire others than the mariners to lade and unlade vessels. The merchants find it more for their interest to do so, than to depend on the mariners, who are particularly ungovernable after the voyage is ended." As, however, the judge was of opinion that the voyage was ended on the arrival of the ship and her safe mooring, and that "the end of the voyage, and the discharge of the cargo, are separate and distinct subjects," the alleged custom of the port of Philadelphia was not necessary to sustain the decree in that case. If, however, as in our case, the seaman expressly obliges himself not to leave the vessel, and to continue his service to her, until she is "discharged of her loading," he cannot protect himself for the breach of this part of his contract, either by the general principles maintained by the judge, or the custom of this port. The case of Edwards v. The Susan [Id. 4,299], relates only to the period from which the ten days are to be computed, before a seaman can commence a suit for his wages. In this the rule taken by the judge appears to me to be the true one.

It is my opinion, in this case, that the libellant left the brig, and the duty he owed to her, before he was entitled to do so by the terms of his contract, and that he did so "without leave first obtained from the master or commanding officer." What penalty or forfeiture has he made himself liable to by this misconduct? On the one side it is said, that he has forfeited all the wages due to him at the time of his desertion: on the other, that he is bound only to make an adequate compensation for his default to the owner of the vessel. In the case of Swift v. The Happy Return, already referred to, the judge, after declaring that he thinks the sea-

men are not bound to unlade the ship, says: "Should it be deemed an additional duty to their common maritime employment to unlade the cargo, they are only answerable in damages for neglect or refusal." He inclines, very properly, against the severity of forfeitures of all the wages for such delinquencies, and very truly says, they "have been called for, on this account, most frequently, when old quarrels at sea, or recent animosities, or differences about accounts have embittered the parties." When ample remuneration can be given for an injury, without such extreme visitations, and they are not required by indispensable discipline, they should be avoided, and the milder and more just redress resorted to. The irregularities and passions of seamen should be held under a wholesome restraint, not without some allowance for their peculiar character and habits. Judge Peters observes that, in insisting upon extreme penalties against them, "the law is too often in violation of its principles, spirit and system, considered and applied to as a means to gratify the passions." In the second article of the seventh title "Of Mariners," in the second book of the Ordinances of Louis XIV. it is said: "The sailor engaged for the voyage shall not quit the vessel without leave in writing, until the voyage is finished, and the vessel moored at the wharf, and entirely unladen." This is the language of the ordinance. Valin, commentating upon this article (1 Valin, Comm. 532) says: "The engagement being for the whole voyage, the officer or sailor is obliged to accomplish it, and cannot depart without leave until the voyage is ended; that is to say, until the ship is entirely discharged, and moored at the wharf, or put in a place of safety." Further, this learned jurist says: "But it often happens that mariners, on the arrival of the ship, go on shore and neglect to return to assist to discharge and unrig the vessel. The proceeding against such men, and the most proper means of correcting them, are to get labourers in their place, at their costs; and what is paid to these labourers is afterwards taken from the wages of these sailors. Nothing is more just, for otherwise, all the mariners would successively abandon the vessel."

I think it clear that the respondent cannot insist upon the forfeiture of all the wages of the libellant, on the general principles of the maritime law; nor, I may add, on the principles of retributive justice. It is, however, claimed under the provisions of the act of congress of 20th July, 1790, inserted in the shipping articles, and making a part of the contract. The clause relied upon is as follows: "If any seaman or mariner, who shall have subscribed such contract as is herein before described, shall absent himself from on board the ship or vessel, in which he shall so have shipped, without leave of the master or officer commanding on board; and the mate, or other officer having charge of the log book, shall make an entry therein of the name of such seaman or mariner, on the day on which he shall so absent himself, and if such seaman or mariner shall return to his duty within forty-eight hours, such seaman or mariner shall forfeit three days' pay for every day which he shall so absent himself, to be deducted out of his wages; but if any seaman or mariner shall absent himself for more than forty-eight hours at one time, he shall forfeit all the wages due to him, and all his goods and chattels, which were on board the said ship or vessel, or in any store where they may have been lodged at the time of his desertion, to the use of the owners of the ship or vessel; and he shall, moreover, be liable to pay to him or them all the damages which he or they may sustain by being obliged to hire other seamen or mariners in his or their place." It is needless to say that this is a highly penal act, and should be construed strictly upon those who seek to enforce it. What is the argument by which the respondent would bring it to bear on the libellant, and exact from him the extreme forfeiture of the act, although he has himself not complied with the requisitions of the act, by making an entry in the log book of the desertion he would thus punish? He contends that such an entry was not necessary in such a case; that the entry is required only when the absenting seaman returns to his duty within forty-eight hours, but that when he is absent for more than forty-eight hours no entry in the log book is necessary, but the delinquency may be proved by any other satisfactory evidence. If this were the law, it would be very difficult to find a good reason for it, and I should adopt it only on a clear expression of the legislative will. Why should the act require a more precise and formal mode of proof of the shorter than of the longer absence; of the lesser than of the greater offence; for the milder than for the severer penalty? Why should it call for this record testimony, made at the time, in the nature of a day book entry, not only of the fact of the absence, but to show that it was without leave, and that the penalty would be exacted for it, in the one case more than the other? It is indispensable to the forfeiture, that the absence should be without leave in both cases. The entry, made on the day, is the proof prescribed by the law to show not only the duration of the absence, which regulates the extent of the penalty, but also that it was without leave, and would be punished according to the act. The seaman is thus secured from the danger of having the penalty claimed, when perhaps, at the time of his absenting himself, no objection was made to it, although express permission may not have been given, and no intention was entertained of visiting him with the penalties of the law; his fault being afterwards resorted to when, in the language of Judge Peters, "old quarrels at sea, or recent animosities, or

differences about accounts have embittered the parties."

These reasons, which have been judicially declared to be the reason and spirit of the law, apply as fully and forcibly to an absence for a longer period than forty-eight hours, as to one within that time. In the phraseology of the act I find nothing to warrant the distinction; certainly not expressly, nor as I think, by any necessary, or reasonable implication. It is enacted, that in order to incur either forfeiture: 1. The seaman shall absent himself from the vessel without leave of the master, or officer commanding on board. 2. The mate, or other officer having charge of the log book, shall make an entry therein of the name of such seaman, on the day on which he shall so absent himself. Thus much for the offence and the evidence directed by the law which creates it, to be preserved of it, applying, in terms and in spirit, generally and equally, to all cases of absence to be punished under the act. They must be without leave, and they must be entered, on the day, in the log book. We then have the graduation of the penalty for such absences. In these a regard is had to their duration, but no change made as to the testimony by which they are to be proved. "And," says the act, "if such seaman or mariner shall return to his duty within forty-eight hours, then such seaman or mariner shall forfeit three days' pay for every day which he shall so absent himself, to be deducted out of his wages; but if any seaman or mariner shall absent himself for more than forty-eight hours at one time, he shall forfeit all the wages due to him, and all his goods and chattels." But there is no intimation that the entry in the log book may be dispensed with, or supplied by other satisfactory evidence in the latter case any more than in the former. All absences, to incur the forfeitures of the act, must be without leave, and must be recorded in the log book on the day they occur. No distinction is made, in these respects, between an absence for one period or another. The difference is only in the penalty, which is reasonable and intelligible. This would seem to me to be very plain and unquestionable, both in the spirit and words of the law, if a different construction had not been supported by a high authority. It is found in the case of Webb v. Duckingfield, 13 Johns. 390. That was an action brought in a common law court, by a seaman on board the Maria to recover wages for a voyage from Savannah to Rotterdam or one more port in Europe, and from thence to her port of discharge in the United States. The plaintiff performed his duty during the voyage and until the vessel arrived in New York, her last port of discharge, and was safely moored in port, when he left her, refusing to remain on board or to assist in discharging the cargo, though he and the rest of the crew were requested to remain. The plaintiff never returned to the vessel, and the master was obliged to hire persons to discharge the cargo. The mate, on the day the plaintiff left the vessel, and on each day till the cargo was discharged, made the following entry in the log book: "all the crew absent without liberty." In this case Judge Van Ness delivered the opinion of the court, and said: "The determination of this question has nothing to do with the mate's making an entry in the log book of the desertion. Such entry, if it had been made, would have been prima facie evidence of the fact; but as it is fully proved by other testimony, that is sufficient without the log book. The reasons for making these entries in the log book are accurately stated by Judge Peters, in the case of Malone v. Bell [Case No. 8,994], and have no application to this cause." Judge Van Ness goes on to say that, not only by the act of congress, but from "the reason and propriety of the thing, the contract with a seaman continues in force until the cargo is finally discharged, and if he leaves the ship without justifiable cause, before that is accomplished, he has no right to recover any part of his wages." As to the reason and propriety of the thing in regard to the whole forfeiture, I have already given my reasons for believing they require no further satisfaction, for this violation of the contract, than a full and fair indemnity to the owner of the vessel; and Valin, above referred to, sustains my opinion on this point. Nor has Judge Peters ever considered that there is any thing in the act of congress by which the contract of a seaman continues in force, until the cargo is fully discharged. His opinion was the reverse of this; and he thought the voyage did not so continue, unless specially stipulated in the articles. It is admitted by Judge Van Ness that Judge Peters has accurately stated the reasons of the act of congress for requiring the entry of a desertion in the log book. By turning to the case of Malone v. The Mary, which is referred to by the court of New York, we shall see that Judge Peters differs altogether from that court as to the nature and necessity of the entry in the log book. The admiralty judge thought this evidence not only prima facie but indispensable, without which the forfeitures given by the act, could not be claimed; that it could not be supplied by other testimony: and that without it no other testimony could be judicially sufficient. This has always been the construction of the act in this district. We must observe, that the reasons of Judge Van Ness for admitting other evidence, and dispensing with the log book entry, apply equally to an absence within, or for more than forty eight hours. He makes no distinction and I presume intended none.

In the case of Malone v. Bell [supra], Judge Peters says: "The entry in the log book is made by the act of congress legal

evidence of the time of coming on board, and of the absence occasioning the mulct on the delinquent seaman." Again: "The compulsion on the mate or keeper of the log book to make the entry was introduced to control the general rule of law, that receiving a seaman on board, who had committed an offence, amounts to a release or pardon." And further: "The entry in the log book is necessary to show that no release was intended, as well as to ascertain the fact with greater accuracy." This last reason, and indeed the other also, applies to every absence for more or less than forty-eight hours. The judge adds: "In case of desertion, he had always considered the entry in the log book evidence of the fact, but not conclusive, though indispensably necessary." There is nothing in this case to warrant the suggestion that Judge Peters thought that in any case of absence, of any duration, the entry in the log book could be dispensed with, or other evidence satisfy the law, when the penalties of the act were claimed on account of it. He considers the entry indispensably necessary in every case, whatever other testimony there may be of the fact. It is so far prima facie, that it is not absolute and conclusive; it may be met and disproved by the proof, but can never be dispensed with. In the case of Thompson v. The Philadelphia [Case No. 13,973], the same judge says, in the same sense, "the entry in the log book is only prima facie evidence." In the case of Jones v. The Phoenix [Id. 7,489], the same judge says: "The log book is by act of congress made legal evidence in proof of desertion, but it is not incontrovertible and conclusive;" but he never takes back or qualifies his opinion that it is "indispensably necessary," and so it has always been considered in this court.

We have a stronger case to show, if it could be doubted, that Judge Peters never intended to be understood to maintain the doctrine, that the entry in the log book was not required on a claim of a forfeiture of wages under the act of congress, or that he supposed there was any difference in this respect between an absence for more or less than forty-eight hours; between a forfeiture of the whole or a part of the wages due. In the case of The Phoebe v. Dignum [Id. 11,110], there was an appeal from the district court, Judge Peters having decreed to the appellee his wages as a seaman on board the said schooner on a voyage from Philadelphia to Jamaica and back. The answer admitted that the libellant had entered as a mariner for that voyage, but insisted that he had, while at Jamaica, absented himself from the vessel, without the consent and against the will of the captain, for four days, which, under the act of congress, amounted to a forfeiture of his wages up to the time of such absence. The case was heard on the bill and answer. Judge Washington delivering his opinion on the appeal, says: "Absence for more than forty-eight hours, without leave of the master, or officer commanding on board, is a forfeiture of all the wages due at that time, provided the officer having charge of the log book shall make an entry therein of the name of such seaman, on the day on which he shall so absent himself. The reason of this is obvious; if such entry be made it repels any presumption that such consent took place, or that the forfeiture was intended to be waived. If no such entry be made, it is to be presumed that the absence was not injurious, and was not objected to. As it does not appear in this case that any such entry was made, the appellee is entitled to his wages. The sentence of the district court is affirmed, with costs." A case could not occur more direct and strong to the point we are considering, to wit, the necessity of the log book entry. The answer stated a desertion for more than forty-eight hours, without the consent, and against the will of the captain, and the truth of this allegation was not denied; it was an admitted fact in the case. Yet this admission of the libellant was not thought enough to dispense with the evidence required by the act; or to be a sufficient substitute for it. In the case of Herron v. The Peggy [Id. 6,427], the court adopts the same principle I have assumed in this case. There was an entry in the log book, but not made according to the directions of the act of congress. The judge says: "As to the remedy under the act, it was waived by the defective entry in the log book. Nevertheless, I think the conduct of this man blamable, and that he ought to be mulcted." A deduction was made, accordingly, from his wages.

On the whole, it is my opinion, that the libellant's leaving the brig, at the time and in the manner he did, was a desertion of his duty, and a violation of his contract, by which he obligated himself not to leave her until the voyage was ended, and she was discharged of her loading. That as a forfeiture of all his wages for this delinquency is, and can be claimed, only by virtue of the act of congress; and as that act prescribes that an entry of such desertion shall be made in the log book; and as no such entry was made in this case, the forfeiture claimed cannot be decreed. The owner of the vessel is, nevertheless, entitled, independently of the act of congress, to a compensation, to be deducted from the wages, for the loss on injury he has sustained in consequence of the libellant's default in his duty, and breach of his contract. No proof has been given of the precise amount of this loss, but it is certain that the service of this man in unloading the brig must have been supplied by hiring another in his place, or by retaining the rest of the crew a longer time. This may be reasonably esti-

mated at five dollars, which is ordered to be deducted from the sum of thirty-one dollars and thirty-three cents, leaving a balance to be paid to the libellant of twenty-five dollars and thirty-three cents.

Decree: That the respondent pay to the libellant, Thomas Knagg, twenty-six dollars and thirty-three cents, and costs.